UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

THOMAS ALBANESE,

    Plaintiff,

v.

PLUMBERS & PIPEFITTERS
NATIONAL PENSION FUND, et al.,

    Defendants.

Case No. 2:06-CV-01357-KJD-GWF

**ORDER**

    Currently before the Court is Defendants' Plumbers & Pipefitters National Pension Fund, (PPNP, or Pension Fund) and United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada's (Pipefitters Union) Motion for Summary Judgment (#26), filed April 2, 2007. Plaintiff filed a Response (#37) on May 1, 2007, to which Defendants filed a Reply (#38), on May 14, 2007.

**I. Facts and Background**

    Plaintiff Thomas Albanese (Albanese) filed this action in state court on August 23, 2006, alleging breach of contract claims against Defendants PPNP and the Pipefitters Union for wrongfully temporarily suspending the deposit of his monthly pension fund.

Albanese has received a pension benefit check from the National Pension Fund every month since 1986.  In October 2004, correspondence mailed to Albanese by the National Pension Fund was returned, marked by the United States Postal Service "Return to Sender. Box Closed. No Forwarding Order on File."  When attempt was made to reach Plaintiff by phone, the Pension Fund learned that Mr. Albanese could no longer be reached at his listed number.  Upon receiving the returned mail, and not being able to reach Plaintiff by phone, the Pension Fund began its internal procedure to temporarily suspend Plaintiff's benefit payments.  Generally, payments are suspended, or held by the National Pension Fund on Plaintiff's behalf, to protect a pensioner from the possibility that their pension benefits are being stolen or otherwise misappropriated.  As a result of the Plaintiff's temporary suspension, beginning in December, 2004, Mr. Albanese's pension benefit was not deposited into his bank account.  On December 15, 2004, the National Pension Fund office received an update of Mr. Albanese's address from the Union.  The new address was recorded as 2219 Rancho Drive #F1071, Las Vegas, NV 89130.  Subsequently, the National Pension Fund sent correspondence to Mr. Albanese's new address.  Upon not hearing back from Mr. Albanese, on December 25, 2004, the Pension Fund instituted its two month suspension procedure which requires a notarized signature of the pensioner before reinitiating benefit payments.  Pursuant to the Fund's two month suspension procedures, on January 10, February 25, March 28, and again on April 21, 2005, the Pension Fund sent letters to Mr. Albanese at his new address requesting a notarized signature card to reinstate his benefit payments and a letter explaining why his payments were being held.  Mr. Albanese failed to respond to any of the letters or to contact the Fund regarding why his benefit payments had stopped being deposited.

Six months after having received the returned mail addressed to Albanese, the Pension Fund initiated its six month suspension procedure that requires, in addition to a notarized signature card, that a pensioner must obtain a note from a doctor indicating that the pensioner is capable of handling his or her own affairs before the payment of benefits can resume.

On May 2, 2005, the Pension Fund received correspondence from Mr. Albanese in which he questioned why his pension benefits had stopped, and also supplied a new mailing address and telephone number. The next day the Pension Fund updated Mr. Albanese's address and telephone number on its database. On May 9, 2005, the National Pension Fund sent Mr. Albanese a letter explaining that he would need to submit a notarized signature card and a doctor's note in accordance with the six month suspension procedure in order to reinstate payment of his benefits. Upon failing to receive a response, a follow up letter was sent to Mr. Albanese on June 14, 2005. On June 20, 2005, the Fund received a response from Mr. Albanese in which he supplied a notarized signature card, but refused to submit a doctor's note. The letter also contained an update telephone extension and new apartment number at the same 2219 N. Rancho Drive address.

By letters dated June 23, July 27, and September 30, 2005, the Pension Fund acknowledged receipt of the notarized signature and explained why a doctor's note was necessary to reinstate Mr. Albanese's monthly benefits payment. Additionally, a copy of the Plan of Benefits was mailed to Plaintiff at that time. Plaintiff continued to refuse to submit a doctor's note. In a letter dated October 5, 2005, Mr. Albanese instructed the Pension Fund not to contact him by phone, but to communicate with him by letter only. After that, another five months passed before the Pension Fund received any further communication from Mr. Albanese. On May 26, 2006, Mr. Albanese sent a letter to the Pension Fund demanding that his benefits payments be reinstated. The fund responded by explaining the reason for the suspension and why a doctor's note was required in order to reinstate payment. This letter was followed up by another letter dated July 31, 2006. The Pension Fund received no response to said letters. As noted above, Mr. Albanese filed a Complaint against Defendants on August 23, 2006, alleging breach of contract.

Here, Defendants seek summary judgment under various arguments. First the Union contends that they had no responsibility for the payment or administration of pension benefits, and thus should be dismissed as a defendant in this action. Second, the Pension Fund claims that Plaintiff has failed to exhaust the Fund's internal administrative appeals process, thus making this

law suit premature.  Third, Defendants assert that Plaintiff has failed to prove that Defendants acted arbitrarily or capriciously in suspending Plaintiff's monthly pension benefit.  Finally, Defendants contend that Plaintiff is not entitled to recover extracontractual damages.

**II.  Standard of Law for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

### A. Standard of Review for ERISA claims

The Supreme Court has established that a federal district court reviews benefit determinations or benefit denials under an ERISA plan under a *de novo* standard, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits and to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 103 (1989). When the plan grants such discretion, a disputed determination is not subject to change by the court except to prevent an abuse of the benefit fund's discretion. Id. at 111; Peterson v. The Hotel Employees and restaurant Employees Int'l Union Welfare Fund, 288 F.Supp.2d 1145, 1148 (D. Nev. 2003).

When reviewing an ERISA benefit determination, the function of the district court is to determine if the benefit plan had a reasonable basis for the dispute decision based upon the facts known to the benefit plan at the time the decision was made. Jett v. Blue Cross & Blue Shield of Alabama, 890 F.2d 1137, 1139 (11th Cir. 1989). Additional facts outside of the administrative record may not be considered. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472 (9th Cir. 1994).

Here, the National Pension Fund's Plan of Benefits states the following in regard to discretionary authority:

> The Trustees shall have the sole responsibility and the sole control of the operation and administration of the Plan and shall have the full power, discretion, and authority to take all action and to make all decisions and interpretations which may be necessary or appropriate in order to administer and operate the Plan, including, whithout limiting the generality of the foregoing, the power, duty, discretion and responsibility to:
> (a) Resolve and determine all disputes or questions arising under the Plan, including the power and discretion to determine the rights of pensioners, participants and beneficiaries, and their respective benefits, and to remedy any ambiguities, inconsistencies or omissions. . . .

(Defs.' Mot. for Summ. J. Ex. 1 at 82.) Here, the Pension Fund's Plan of Benefits grants the administrator broad discretionary authority to construe the terms of the Plan.

5

Moreover, Section 4 of the Plan of Benefits sets forth the authority for withholding payments. It states:

> In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall be made hereunder, the trustees may withhold such payment until there shall have been made an adjudication of such question or dispute which, in the Trustees' sole judgment is satisfactory to them . . . .

## III. Analysis

### A. Union as a Defendant

The Pipefitters Union seeks that the Court dismiss them as a defendant in this action, arguing that they have no responsibility for administering Mr. Albanese's pension benefit payments from the National Pension Fund or for any decisions regarding his temporary suspension of benefits.

In describing how the fiduciary requirements of ERISA are intended to insulate the trust from an employer or union's interest, the United States Supreme Court has stated that section 1103(a) of ERISA vests "exclusive authority and discretion to manage and control the assets of the plan" in the trustees alone, and not in the employer or the union. N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc., 4353 U.S. § 322 (1981).[1]

Here, a review of Plaintiff's Complaint demonstrates that Plaintiff fails to allege that the Union exercised any discretion or control over the administration of the National Pension Fund, nor has he alleged any claims against the Union. Specifically, Plaintiff's claims surround the withholding of his pension benefits, over which Defendant Union had no authority or decision making power. Therefore, the Court agrees that Plaintiff has failed to state a claim against Defendant Pipefitters Union upon which relief can be granted, and hereby dismisses them from the action.

---

[1] Specifically, 29 U.S.C. 1103(a) states that the assets of an employee benefit plan shall be held in trust by the trustees, and that "[s]uch trustees shall be either named in the trust instrument or in the plan instrument . . . or appointed by a person who is named a fiduciary. . . ." Here, Plaintiff has made no allegation that the Union had any authority or discretion over the plan assets or benefits.

**B. Failure to Exhaust Remedies Under ERISA**

The Pension Fund contends that Plaintiff's claims should be dismissed due to the Plaintiff's failure to exhaust his administrative remedies pursuant to the Pension Fund's Plan of Benefits.

ERISA requires covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied. 29 U.S.C. § 1133. The Ninth Circuit has upheld the requirement that plaintiffs in ERISA actions must exhaust available administrative remedies before filing suit in federal court. Sarraf v. Standard Ins. Co., 102 F.3d 991 (9th Cir. 1996); Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust, 50 F.3d 1478, 1483 (9th Cir. 1995).

Courts have articulated sound policy for upholding the exhaustion requirement, such as the reduction of "frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust, 50 F.3d at 1483. Additionally, one of the purposes of the review process is to generate a "benefits determination that is thoroughly informed by the relevant facts and the terms of the plan and, if benefits are denied, includes an explanation of the details that is adequate to insure meaningful review of that denial." Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 395 (5th Cir. 1998); Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980) (a "primary reason" for the exhaustion requirement is that a prior fully considered record by the fund trustees "may well assist the courts when they are called upon to resolve the controversies"). The Ninth Circuit has held that "federal courts have the authority to enforce the exhaustion requirement in ERISA suits, and that as a matter of sound policy they should usually do so." Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980).

Here, the Pension Fund's Plan of Benefits specifically details an individual's right to appeal decisions made by the Fund Office. (See Defs.' Mot. for Summ. J. Ex 1 Section 9.04.) However, Plaintiff has failed to produce any evidence to suggest he sought administrative review of his claim prior to filing this action. At this point in the proceeding, the Court finds that Plaintiff's Complaint is premature, as the Trustees of the Pension Plan have not yet made a final decision regarding the

Plaintiff's allegations of error.  The Court's role in ERISA benefits cases is to review the decision of the Trustees to prevent an abuse of the Fund's discretion.  Here, there has been no final administrative decision for the Court to review.   For this reason, the Court finds that Plaintiff's Complaint should be dismissed without prejudice, in order to allow Plaintiff to proceed with and exhaust his administrative remedies.  If, upon exhausting administrative remedies, Plaintiff wishes to file an action, he may do so, and at that time, the Court will have a full record of the Trustees' decision to review under the proper standard.

### C. Abuse of Discretion

Assuming *arguendo* that Plaintiff had met the Pension Fund's Plan of Benefits exhaustion requirements, the Court finds that Defendants did not commit an abuse of discretion in temporarily withholding Plaintiff's benefit payments.  Even a cursory review of the facts demonstrates that the Pension Fund followed its internal and published policies, and that said policies are reasonable.

As noted in Defendants' Motion, the Court's inquiry into whether the Pension Fund's decision was arbitrary and capricious or an abuse of discretion depends upon whether their interpretation of the plan document was unreasonable.  Lewis v. Saint Mary's Healthfirst, 402 F. Supp. 2d 1182, 1187 (D. Nev. 2005).  Here, the Court finds that the Pension Fund's administrative decision to temporarily suspend Plaintiff's monthly benefit payments was in accordance with its internal policies—applied uniformly to all pensioners.

Here, Plaintiff's benefits were temporarily suspended in accordance with internal policies upon his mail being returned undeliverable, and only after months of Plaintiff failing to respond to the Pension Fund's attempts to locate and communicate with him.  Thereafter, upon being informed of the requirements to have his benefits reinstated, Plaintiff refused to comply with the Pension Fund's internal policy, and provide a doctor's note.  Without delving too deeply into the Pension Fund's Plan of Benefits policies specifically, the Court finds that said policies appear reasonable on their face due to the nature of pension benefits described in Defendants' Motion and supported by the

record.  Moreover, in accordance with its internal policies, the Court finds that the Pension Fund's actions were reasonable.

### VI. Conclusion

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#26) is **GRANTED** without prejudice.

DATED this 31st day of March, 2008.

_____
Kent J. Dawson
United States District Judge